## MYERS v. OAK HILL COAL COMPANY.

[No. 15,834. Filed January 20, 1937.]

*Stanley E. Stohr,* for appellant.

*Hays & Hays, Alonzo C. Owens, John S. Taylor* and *J. Olias Vanier,* for appellee.

LAYMON, J.—This is an appeal from an order of the full Industrial Board of Indiana denying compensation

to the appellant on his application filed with the Industrial Board of Indiana on April 6, 1936, wherein appellant claimed compensation against the appellee, based upon a disability alleged to be the result of an accident arising out of and in the course of his employment. Before filing his application for compensation, appellant attempted an adjustment which resulted in a disagreement between the parties, and thereafter there was a hearing by the single member of the Industrial Board, who, on May 2, 1936, made a finding and order that appellant take nothing by his application. The appellant then prayed and was granted a review by the full Industrial Board. Pursuant to a hearing on June 22, 1936, by the full Industrial Board of Indiana of said cause, on review of said finding and order dated May 2, 1936, the full Industrial Board of Indiana on July 3, 1936, made and entered a finding and order, which, omitting the formal parts, is as follows:

"And the Full Industrial Board having heard the argument of counsel, having reviewed the evidence, and being duly advised therein, now finds that on April 6, 1936, plaintiff filed his application for the adjustment of a claim for compensation.

"And the Full Industrial Board now finds for the defendant on plaintiff's application.

"IT IS THEREFORE CONSIDERED AND ORDERED by the Full Industrial Board of Indiana that plaintiff shall take nothing by his complaint herein and that he shall pay the cost of this proceeding."

From the above finding and order by the full Industrial Board, appellant prayed and prosecuted this appeal, assigning as errors (1) that the award of the full Industrial Board is contrary to law; (2) that the evidence is of such a character that a finding on all points necessary to plaintiff's claim is mandatory.

The appellant earnestly contends that the evidence is

of such conclusive character as to force a conclusion contrary to that of the Industrial Board and that this court should substitute its judgment for that of the Industrial Board.

It is conceded by the parties that the evidence is sufficient and undisputed on all of the essential facts entitling appellant to an award for compensation, save and except the fact as to whether appellant's disability was the result of an accident arising out of and in the course of his employment. The evidence shows without dispute that appellant's disability was due to cellulitis in his right arm. Answering the contention that the evidence pertaining to appellant's disability is of such conclusive character as to force the conclusion that said disability was the result of an accident arising out of and in the course of his employment requires us to review the evidence in that regard.

Appellant testified in substance: That on January 31, 1936, he was an employee of the appellee and was working at the mine tightening lugs on a conveyor wheel which conveyed coal to the boiler room; that he was working with a fellow laborer who held the bolts while he adjusted the taps, and, in adjusting these taps, the wrench he was using would slip off, causing him to bump his arm and elbow on "more near the edge" of a timber approximately 6 x 6 to which the axle of the conveyor was attached; that this bump was on the tip of his elbow where the elbow comes to a point when the arm is bent. After bumping his elbow he continued working and did not say anything about it to the mine boss but did mention it to his fellow workman. The weather at the time was very cold. Appellant testified that he finished the day's labor and the following day helped repair cars, working out in the open in a temperature close to zero. He also testified that his work required him to be out in the weather practically all of the time. On February 1st he

took a chill at the mine at about 1 P. M., and reached home at about 5 P. M., at which time he called his family doctor. He testified that he had formerly had an injury to the hand on his right arm, whereby he lost two fingers, and subsequently the circulation was somewhat impaired in the wrist. He continued working, however, and had not had any trouble with his elbow prior to January 31st. The only trouble he had had with this arm was in the wrist and in the back of the hand. Appellant testified that his arm hurt him the last two days he worked and by 5 o'clock "it was plenty sore"; that at the time of bumping his elbow he took off his jumper coat and waist and asked his fellow workman to look at it, whereupon it was discovered that his arm was bruised but that there was no abrasion of the skin. When he left the mine on February 1st he was chilling so hard that he thought he was taking pneumonia and did not believe that the elbow injury was very severe. Appellant testified that his doctor was called and examined him and afterwards performed surgery upon his right arm. During the examination appellant mentioned to the doctor about bumping his elbow and that his arm had been hurting him for a couple of days.

Witness Marion Wilson testified that he was an employee of appellee and working at the mine in company with the appellant on the 31st day of January, 1936; that each of them had a wrench and that he was holding the taps and appellant was doing the bolting; that every once in a while appellant's wrench would slip and he would hit the wheel with his elbow; that appellant did not complain about bumping his elbow until "he got so cold we could not stand it." Witness and appellant went into the shop to get warm, and at that time appellant began to complain. Said witness testified that appellant pulled his coat off to warm his arm and there was a "kind of a bruised spot probably

as big as a quarter, maybe a little larger, and that this bruised spot was right in close to the tip of the elbow.

The doctor testified that he first saw appellant in the afternoon or evening of February 1, 1936, at appellant's home. Appellant was complaining about feeling badly, said he had chilled, and complained more about his chest than anything else. The witness made a general physical examination at the time which disclosed that appellant's chest was in very good shape. Appellant had expressed the fear that he might be taking pneumonia, but there did not seem to be any danger of that and witness commenced to look for other things. In the course of the examination it developed that appellant had an elbow he was complaining of, "his right elbow, said it was sore." Upon examination of the right elbow, witness found a discolored spot on the back of the elbow between the tip of the olecranon process and the external condyle; that the spot found was the type that follows a bruise and that the type of discolored area following a bruise is "not necessarily, it may be, it could be," the same in appearance as a discolored area that follows a freezing; that when said witness saw the discolored area he commenced to question appellant about whether anything had happened to the elbow; that appellant did not seem to attach a great deal of importance to this but said he bumped his elbow in the course of his work, not once but several times; that appellant said it did not seem to be giving him a great deal of pain at that time, and witness ran over it without attaching a great deal of importance to it in his mind until the arm began to pain appellant severely, which was some hours later; that there developed in the right elbow a condition of extensive cellulitis, involving the lower part of the arm, the elbow, and almost all of the forearm. The doctor was asked:

"Q. Is it your opinion that this bruise that he had

on his elbow was the cause of cellulitis that he had from and after February 1st, 1936, up to the present time? A. Well, it is sufficient cause for that sort of thing. It is just a little difficult for one to say absolutely that a given thing causes something else, but that is a very sufficient cause for that sort of condition.

"Q. That cellulitis condition does not spring up unless there is an injury or some abnormal condition present, does it? A. As a rule it does not, it could. There are certain types of cellulitis that come so far as we know spontaneously. We have reason to think that perhaps there is always a reason back of it that may have been so slight as to have been overlooked.

"Q. That is, there might have been an injury, blow to it. A. Yes, very trifling injury sometimes can cause those things."

The witness further testified that the cold weather lowers the resistance of soft tissues, causing very minor injuries to have effects that they might not otherwise have; that the condition of appellant's right wrist and his right hand could have something to do with making it easier for the injury to produce the cellulitis—"that depends on how much he is disabled as a result of the injury, he might put his arm under undue strain, things of that sort, it is problematical. I could not say positively as to that but it is among the possibilities."

Upon cross-examination the doctor was asked:

"Q. You could not tell from your own findings just what might have caused that condition, could you, Doctor? A. Which you mean, the bruise?

"Q. The cellulitis you speak of. A. Well, I would have an opinion about that, but we—it is a little difficult always to absolutely say. As I said before, those things are sufficient cause for that sort of condition arising, but now as to whether there is a direct connection between the condition, sufficient cause or not, as a matter

of fact a person would be unable to say except as a matter of opinion.

"Q. What is cellulitis? A. It is an inflammation of the soft tissues."

Upon redirect examination the doctor was asked:

"Q. Doctor, on this you stated you could not be absolutely positive as to the cause of it but you did have an opinion, will you say what was your opinion as to the cause of the cellulitis you found? A. I am inclined to believe that it arose from the injury acting on tissues that were to a certain extent devitalized, perhaps by exposure."

In answering appellant's contention we must remember that the burden of establishing each fact necessary to a legal award of compensation rests on the applicant. *Union Sanitary Mfg. Co.* v. *Davis* (1917), 64 Ind. App. 227, 115 N. E. 676.

In the case of *Swing* v. *Kokomo Steel, etc., Co.* (1920), 75 Ind. App. 124, 130, 125 N. E. 471, and cases cited therein, the court said: "And the Industrial Board, in determining whether such burden has been discharged, may not only weigh the evidence but may also draw reasonable inference from such facts as it deems established thereby. When the Industrial Board has discharged its duty in this regard, and has reached a conclusion as to the ultimate facts which have or have not been established, and has embodied such conclusion in a finding of facts as the statute requires, this court must accept the facts so found as true, unless the evidence is of such a conclusive character as to force a contrary conclusion." The court further said, citing authorities (p. 131) : "However, in order to reach a contrary conclusion, we may not weigh the evidence, nor may we disregard any reasonable inferences which the Industrial Board may have drawn from the facts which evidence tends to establish."

From our consideration of the evidence pertaining to the subject of inquiry—as to whether the disability of the appellant was the result of an accident arising out of and in the course of his employment—we find that it is uncertain and indefinite and for the most part susceptible to more than one conclusion.

Having failed to find that the evidence is of such a conclusive character as to force a contrary conclusion to the one reached by the Industrial Board, and adhering to the well established rules above set out, we are not permitted to disturb the finding and order of the board. Therefore, we cannot say that the finding and order of the full board is contrary to law. The order is affirmed.

Bridwell, J., Curtis J. concur.